UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **JEREMY GOLDBLATT,** : | |
| *Plaintiff* : | |
| v. : | C.A. No. 18-cv- |
| **TOWN OF TIVERTON,** by and through its | |
| Treasurer, Denise G. Saurette, alias : | *Jury Trial Demanded* |
| and, **BRYAN PALAGI**, alias, : | |
| **JOHN LEDUC**, alias, and, each individually and | |
| his official capacity as a Tiverton Police : | |
| officer, Chief of Police Patrick W. Jones, alias, : | |
| individually and in his official capacity, : | |
| *Defendants* : | |

## COMPLAINT

### Introductory Statement

1. This civil action is brought by the Plaintiff seeking a declaratory judgment, injunctive relief, and compensatory and punitive damages for acts and/or omissions of Defendants in violation of Plaintiff's rights to freedom from unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983, and under Article 1, § 6 of the Rhode Island Constitution and under the common law of the State of Rhode Island, violations of Title II of the Americans with Disabilities Act, 42 U.S.C. §12131-34, and the Rhode Island Civil Rights of People with Disabilities Act, §42-87-1, *et seq.* ("CRPD")..

2. Plaintiff Goldblatt's claims arise from the prosecution of a case that was dismissed by the prosecution on July 22, 2016, which stems from an encounter with the Tiverton Police Department on October 30 thru October 31, 2015.

3. The aforementioned encounter is the second encounter with Defendant Palagi, and the Tiverton Police Department.

4. Defendant Palagi approached Mr. Goldblatt, after Mr. Goldblatt had stopped his vehicle on the side of the road to look for directions.

5. Knowing from a previous encounter that Mr. Goldblatt was affected by mental health conditions, and even though Mr. Goldblatt exhibited clear symptoms and behaviors indicative of mental illness, Defendant Palagi nonetheless treated Mr. Goldblatt as a DUI ("Driving Under the Influence," R.I.Gen. Law §31-27-2) suspect, whilst not demonstrating any DUI Indicators.

6. Defendant Town of Tiverton's failure to provide appropriate training and supervision over how its police officers respond to individuals with mental health disabilities, and in the Constitutional prohibitions against arresting and prosecuting people without probable cause has cultivated an environment in which these Defendant police officers acted accordingly and thereby causing Mr. Goldblatt great harm.

## II      Parties

7. Plaintiff Jeremy Goldblatt ("Plaintiff Goldblatt" or "Mr. Goldblatt") was at all times relevant to this Complaint a resident of Freetown, Massachusetts. Mr. Goldblatt suffers from an array of mental illnesses, which severely limits his major life activities as set forth in Title II of the Americans with Disabilities Act.

8. Defendant Town of Tiverton ("Tiverton" or "Town") is a municipal corporation duly authorized and organized under the laws of the state of Rhode Island and is sued through its treasurer, Denise G. Saurette, alias, the official designated by R.I.G.L. §45-15-5 to be named in a suit for relief against the Town. The Town is liable under the doctrine of *Respondeat Superior* for the acts and/or omissions of its agents, employees, and/or representatives committed in violation of State law complained of herein.

9. Defendant Bryan Palagi ("Defendant Palagi") is sued individually and in his official capacity as a police officer with the Town of Tiverton and at all relevant times was acting under color of state law.

10. Defendant John Leduc ("Defendant Leduc") is sued individually and in his official capacity as a police officer with Tiverton Police Department and at all relevant times was acting under color of state law.

### III.  Jurisdiction

11. This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1343, 1367, 2201 and 2202.

### IV.  Venue

12. Venue is proper in this Court since, on information and belief, all of the Defendants reside or may be found in the District of Rhode Island in compliance with the requirements set forth in 28 U.S.C. §1391.  Venue is also proper because a substantial part of the events and omissions giving rise to these claims occurred in the District of Rhode Island.

### V.  Material Facts

13. On October 30, 2015 Plaintiff Goldblatt was on his way from Fall River, Massachusetts to see his friend compete in an MMA (Mixed Martial Arts) event at Twin River Casino in Lincoln, Rhode Island.

14. Mr. Goldblatt has received psychiatric care since the age of six.  His diagnosis currently includes severe depression, anxiety, and ADHD.

15. In 2014, Mr. Goldblatt's disability was recognized by the federal government through the designation of him as disabled according to the requirements of the Social Security Disability Insurance (SSDI) program.

16. He has undergone significant treatment during the past years, including repeated hospitalization.  Still, Mr. Goldblatt faces substantial impairment to major life activities.

17. Mr. Goldblatt's first encounter with Tiverton police, and Defendant Palagi in particular was as the result of a mental health crisis he suffered in February 2015.

18. During the February 2015 incident, officials from the Freetown, Massachusetts Police Department, whom Goldblatt was known to, and known not to be a threat, had contacted the Tiverton Police Department to let them know that Mr. Goldblatt was approaching their jurisdiction in a vehicle in the throes of a medical emergency and requested that Tiverton assist in de-escalating the situation, as he was not a threat to others but only to himself.

19. At the time, Mr. Goldblatt had taken an overdose of medication in a suicide attempt, and began driving. To which at that point in time, he was arrested by Defendant Palagi.

20. At approximately 6:00 p.m on October 30, 2015 while driving from Fall River to Lincoln, Mr. Goldblatt somehow took the wrong exit and ended up on Route 24 heading south.

21. To avoid looking at his phone while driving, Mr. Goldblatt took the Fish Road exit in Tiverton and pulled over to the side of the road to make a phone call and ask for directions.

22. Almost immediately, Defendant Palagi, driving a Tiverton police car, pulled up behind Mr. Goldblatt.  Defendant Palagi got out of his car and approached the driver's side window.

23. When Defendant Palagi saw Mr. Goldblatt, he indicated that he recognized Jeremy and his vehicle from the incident the previous February.

24. When Defendant Palagi confronted Mr. Goldblatt at the side of the road on October 30, 2015, the officer was well aware that Jeremy suffered from mental illness as they admitted him to

Newport Hospital, and were communicated that Jeremy was in the middle of a metal health crisis by Freetown Police.

25. Plaintiff Goldblatt explained to Defendant Palagi the he was lost and running late, and showed Defendant Palagi the google map he was viewing on his phone.

26. Rather than point Jeremy in the right direction, Defendant Palagi ordered him out of the car, and insisted that he perform standardized field sobriety tests ("SFST's").

27. Plaintiff Goldblatt responded that he hadn't been drinking and asked why he was being treated like a criminal.  However, he complied with Defendant Palagi's orders.

28. Defendant Palagi made a sarcastic remark that Mr. Goldbaltt was drinking and on drugs the last time they met, Although Defendant Palagi later claimed that he had probable cause to arrest Mr. Goldblatt for Driving Under the Influence [INSERT R.I.Gen.Laws ], the SFST's were conducted on uneven surface off the shoulder of the road and had Jeremy positioned facing oncoming traffic with headlights glaring, against proper procedure according to NISTA.

29. Nonetheless, Plaintiff Goldblatt showed no signs of intoxication or driving under the influence.  Defendant Palagi even noted in his description of the Nystagmus Horizontal Gaze (NHG) that Plaintiff Goldblatt's pupils appeared normal.

30. Defendant Palagi then asked Mr. Goldblatt to take the notoriously confusing "Walk and Turn" test on an uneven dirt surface, in the brush, to which Mr. Goldblatt responded that he did not wish to do so, given that his feet are large and that he didn't understand the directions.  However, Defendant Palagi claimed that Mr. Goldblatt was not allowed to refuse to take the test .

31. Defendant Palagi then administered a Drager Preliminary Roadside Breath Test (PBT), of which after three separate tests produced a 0% level of alcohol.  However, Defendant Palagi, arrested Jeremy upon suspicion of DUI.

32. Mr. Goldblatt was arrested, handcuffed, and brought to the Tiverton police station.

33. From the Tiverton Police Station, Defendant Ludac transported Jeremy to the Newport Hospital in which a blood test was obtained, which resulted in a negative result for alcohol.

34. Fredrick Goldblatt, upon arrival to the Tiverton Police Station, in speaking with Defendant Palagi, inquired about bail for his son as he did not drink or do drugs, was replied to by Defendant Palagi, with laughter in which he stated well not six months ago, referencing his son's suicide attempt.

35. Tiverton sought that he be held as a probation violator from the charges sustained from his earlier suicide attempt in Feburary, knowing he had mental health issues.

36. Informed that it's possible he will be held throughout thanksgiving, an ever important holiday to Jeremy.

37. Eventually Jeremy is released, from at which point, he falls back into a depression and tailspins out requiring inpatient treatment.

38. Blood Test results are returned on November 24, 2018, which report that there are no ethanol or drugs detected in his blood.

39. Tiverton would not dismiss the case until July hanging on to a 'disturbing the peace' charge, insisting upon Jeremy plea and threatening that he may be found a violator of probation if not.

40. Upon information or belief, at no point did any member of the Tiverton Police Department conduct any type of mental health screening or assessment of Mr. Goldblatt.

*Municipal Liability*

41. Upon information and belief, the Tiverton Police Department has a custom and practice of failing to properly train and supervise its officers in the

42. As a direct and proximate result of the Defendants' acts and/or omissions, including, but not limited to, those described herein, the Plaintiff has suffered deprivation of his federal and state constitutional rights.

43. As a direct and proximate result of the Defendants' acts and/or omissions, including but not limited to those described herein, the Plaintiff has suffered and will continue to suffer mental anguish, personal injury, pain and suffering, injury to reputation, impairment of rights to be free from unreasonable search and seizure, deprivation of his civil rights, expenses for legal services, and other great damage.

## VII.  Claims For Relief

44. Plaintiff hereby incorporates into the counts below the allegations contained in the above paragraphs as if fully incorporated and set forth herein.

### COUNT ONE

*False Arrest and False Imprisonment in Violation of the Fourth*
*Amendment and Actionable Under  42 U.S.C. §1983*

45. Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have violated Plaintiff Howie's right to freedom from unreasonable search and seizure, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983.

### COUNT TWO

*False Arrest and False Imprisonment in Violation of*
*Article 1, §6 of the Rhode Island Constitution*

46. Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, violated Plaintiff Goldblatt's right to freedom from unreasonable search and seizure, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under Article 1, §6 of the Rhode Island Constitution directly actionable in accordance with *Jones v. State of Rhode Island*, 724 F. Supp. 25 (D.R.I. 1989)

## COUNT THREE

*Common Law False Arrest*

47. Defendants Officers, while acting in the scope of their employment, by their individual and/or concerted acts and/or omissions detained Plaintiff without probable cause and with no other legal justification, thereby causing Plaintiff to sustain harm as aforesaid.

## COUNT FOUR

*Malicious Prosecution in Violation of the Fourth, Fifth and Fourteenth Amendments, Actionable Through 42 U.S.C. § 1983*

48. Defendants, acting under color of law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have maliciously caused criminal charges to be brought against Plaintiff Goldblatt, without probable cause and with malice, causing Plaintiff to suffer harm as aforesaid and have therefore deprived Plaintiff of rights secured under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, actionable through 42 U.S.C. §1983.

## COUNT FIVE

*Malicious Prosecution in Violation of Article 1, § 6 of the Rhode Island Constitution*

Defendants, acting under color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have maliciously caused criminal charges to be brought against Plaintiff Goldblatt, without probable cause and with malice, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under Article 1, §6 of the Rhode Island Constitution directly actionable in accordance with *Jones v. State of Rhode Island*, 724 F. Supp. 25 (D.R.I. 1989).

## COUNT SIX
### *Common Law Malicious Prosecution*

49. Defendants, while acting in the scope of their employment, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have maliciously caused criminal charges to be brought and prosecuted against Plaintiff Goldblatt, without probable cause and with malice, in violation of the common law of the State of Rhode Island, causing Plaintiff to suffer harm as aforesaid.

## COUNT SEVEN
### *Discrimination Based on Disability in Violation of Title II of the Americans with Disabilities Act Against Town of Tiverton*

50. Defendant discriminated by wrongly arresting and prosecuting Mr. Goldblatt because of the effects of his disability, and failing to reasonably accommodate Mr. Goldblatt's disability during the purported investigation, arrest and prosecution, causing Plaintiff to suffer harm as aforesaid.

## COUNT EIGHT
### *Violation of the Civil Rights of People with Disabilities Act, R.I.Gen.L. §42-87-1 et seq.*

51. Defendants failed to accommodate Plaintiff Goldblatt's disability in that, among other acts and omissions, they did not evaluate his mental health, and provided no accommodations in response to his disability nor made any attempts to provide such accommodations, causing Plaintiff to suffer harm as aforesaid.

## COUNT NINE
### *ABUSE OF PROCESS*

52. Defendants, while acting in the scope of their employment, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have maliciously caused criminal charges to be brought and prosecuted against Plaintiff Goldblatt, without probable

cause and with malice, in violation of the common law of the State of Rhode Island, causing Plaintiff to suffer harm as aforesaid.

53. Additionally, after it was apparent after the results of the Blood Test came back negative for any substances, the Defendants refused to dismiss the all the charges and insisted upon a plea unreasonably holding onto the charges levied in a earlier suicide attempt which caused him to be on probation, and the threat that he'd be a violator of probation.

## COUNT TEN
### *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

54. Defendants, while acting in the scope of their employment, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, caused intentional infliction of emotional distress to Jeremy as they knew or should have known that a person in his position, with his history of mental health issues, would be irreparably harmed by their actions.

## COUNT ELEVEN
### *NEGLIGENT INFLECTION OF EMOTIONAL DISTRESS*

55. Defendants, while acting in the scope of their employment, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have maliciously caused criminal charges to be brought and prosecuted against Plaintiff Goldblatt, without probable cause and with malice, in violation of the common law of the State of Rhode Island, causing Plaintiff to suffer harm as aforesaid.

### **Prayers for Relief**

WHEREFORE, Plaintiff hereby prays that this Court grant the following relief:

1. A declaratory judgment that the Defendants, in the manner described herein, violated the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, §6 of the Rhode

Island Constitution by violating Plaintiff's right to be free from unreasonable search and seizure, and maliciously prosecuted him in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the common law of the State of Rhode Island.

2. Permanent injunctions requiring Defendants to properly train, supervise and discipline;
3. An award of compensatory damages;
4. An award of punitive damages;
5. An award of reasonable attorney's fees and costs of litigation to Plaintiff pursuant to 42 U.S.C. §1988;
6. Such other and further relief as this Court deems just and proper.

## VIII.  Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

## IX.   Designation of Trial Counsel

Plaintiff hereby designates Lawrence Almagno, Esquire, as trial counsel.

Respectfully Submitted,
Jeremy Goldblatt

By his Attorney,
ALMAGNO LAW

/s/ Lawrence P. Almagno Jr.
Lawrence P. Almagno Jr. #9185
973 Reservoir Avenue, Suite 200
Cranston, RI 02910
T | (401)-946-4529
F | (401)-464-4529